# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Antonio Daniels,<br>      Plaintiff,<br>v.<br><br>Harsco Corporation,<br>      Defendant. | Case No. 3:22-CV-02752-JFA-KDW<br><br>**AMENDED COMPLAINT** |

Plaintiff Antonio Daniels (hereinafter "Plaintiff") alleges the following as an Amended Complaint against the Defendant, Harsco Corporation (hereinafter "Harsco" or "Defendant"). This Amended Complaint is filed within the time provided in Fed. R. Civ. P. Rule 15(a)(1)(B).

## PARTIES

1. Plaintiff is a forty-eight (48) year old African-American citizen and resident of the State of South Carolina, County of Richland, and has remained so at all times relevant to the allegations of this Complaint.

2. Upon information and belief, Harsco is a corporation organized and existing pursuant to the laws of the State of Delaware that maintains its principal place of business in Pennsylvania.

## JURISDICTION AND VENUE

3. As stated by Harsco in its Notice of Removal dated August 18, 2022 [Doc. No. 1.], this court has subject matter jurisdiction over this matter based on 28 U.S.C. § 1331 and § 1367.

4. This court has personal jurisdiction over Harsco because Harsco sought and obtained authority to conduct business in South Carolina from the South Carolina Secretary of State, has conduct business in South Carolina since 1963, and committed a substantial portion of the conduct complained of herein within South Carolina. Moreover, Harsco submitted to personal

jurisdiction by removing this action and responding to Plaintiff's Complaint without raising Fed. R. Civ. P. Rule 12(b)(2) as a defense.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C § 1441. Harsco has consented to venue in this court by filing its Notice of Removal and responding to Plaintiff's Complaint without raising Fed. R. Civ. P. Rule 12(b)(3) as a defense.

## COMMON FACTUAL ALLEGATIONS

6. Plaintiff repeats the preceding facts and allegations of his Complaint as if fully set forth verbatim and incorporates the same be reference.

7. Plaintiff began working at Defendant's facility in Lexington County (hereinafter the "Facility") in October 2007 as a mechanical assembler working on railway equipment.

8. Defendant's employees at its Facility work in teams and have to have identification badges to pass through security and enter the Facility.

9. In or around May 2019, Plaintiff was promoted to the position of team leader and his hourly wage was increased to $27.75 an hour.

10. In March 2020, Defendant transferred Byron Tobin ("Tobin") into a supervisor position at the Facility.

11. In this position, Tobin was responsible for supervising Plaintiff's team of employees and was the direct supervisor over Plaintiff.

12. In March 2020, Defendant hired Kevin Greer ("Greer") as a production manager for the Facility.

13. In this position, Greer was responsible for overseeing the supervisors, including Tobin.

14. In May 2020, Plaintiff reported to Tobin that a railway machine was being taken

outside to run prior to having windows installed because it posed a direct and unnecessary danger to Defendant's employees working on the machinery.

15. Tobin disregarded Plaintiff's concerns and pushed work on the machine to proceed.

16. Plaintiff then reported the unsafe condition to Greer. Greer responded that he would check on the situation and get back to Plaintiff.

17. Another co-worker on Plaintiff's team, Todd Carter ("Carter"), reported concerns about the safety of running the railway machine before the windows were installed to James Butner ("Butner"), one of Defendant's employees that supervises the safety of operations at the Facility.

18. Tobin discovered that Plaintiff and Carter had reported the unsafe condition to Tobin's superiors and safety personnel and took Plaintiff and Carter off the factory floor and into an office and attempted to intimidate them for having reported their safety concerns to the safety supervisor

19. During the following weeks, Tobin began repeatedly harassing and attempting to intimidate Plaintiff while he was working at the Facility.

20. On May 19, 2020, Tobin approached Plaintiff and began yelling at him about a machine that was not out of the shop and onto the yard. Plaintiff attempted to explain that other crew members were working on the machine and it would be moved onto the yard when they were done.

21. Tobin responded by forcing Plaintiff to go into an upstairs office and accused Plaintiff of going against him when reporting the unsafe condition to the safety supervisor back in March 2020, and had gone against his authority on other occasions. Tobin then demoted Plaintiff from his position as team leader.

22. On May 21, 2020, Plaintiff met with Greer and Shannon Godby ("Godby"), who is

a representative of Defendant's Human Resources Department.

23. During this meeting, Plaintiff reported that Tobin had been harassing him on the job and retaliating against him since the reporting of the safety concerns in March 2020. Plaintiff also requested a transfer from the team under Tobin. Greer and Godby told Plaintiff they would look into his complaints and follow-up with him, which never happened.

24. On June 4, 2020, Tobin directed a meeting on the floor of Defendant's Facility and announced that managers would no longer force employees to work mandatory overtime, the team leaders would be deciding which employees needed to work at certain times, and that overtime would now be on a voluntary basis.

25. On June 13, 2020, Plaintiff completed his scheduled shift and placed a request for a vacation day for the following Monday, June 15, 2020.

26. On June 16, 2020, Plaintiff returned to work and was immediately confronted by Tobin. Tobin accused Plaintiff of leaving early on June 13 and claimed Plaintiff was on mandatory overtime on June 13 despite no one informing him of this purported assignment.

27. Shortly after being confronted by Tobin on June 16, 2020, Tobin confronted Plaintiff again and told Plaintiff that he was suspended and instructed him to turn over his identification badge and that Defendant's human resources department would get in touch with him.

28. When Plaintiff contacted Defendant's human resources department later that same day, Plaintiff was told that he was suspended for walking off the job on June 13, 2020, and Plaintiff was also told that Tobin had reported that Plaintiff had an unexcused absence from work for June 15, 2020, despite Plaintiff having placed a request for vacation that day on June 13, 2020. During this phone call with Defendant's human resources department, Plaintiff again reported that Tobin

had been harassing and intimidating him since the reporting of the potential safety hazard in May 2020 and was told that his complaints would be investigated, and the matter would be followed-up on.

29. On June 19, 2020, having not received any response from Defendant, Plaintiff again contacted Defendant's human resources department and the representative informed Plaintiff none of his complaints were in his file and instructed Plaintiff to return to work the following Monday, June 22, 2020. Since Tobin had taken Plaintiff's identification badge he would not be able to enter the gate and special arrangements would need to be made to ensure he could access the facility.

30. On June 22, 2020, Plaintiff arrived at Defendant's facility thirty (30) minutes prior to his normal work start time but no one appeared to let Plaintiff into the facility. Plaintiff reported he could not access the facility to Defendant's human resources department, returned to his home, and put in a request for emergency vacation with human resources for any time missed that morning due to Defendant's failure to provide him with access to the facility.

31. Tobin subsequently contacted Plaintiff on June 22, 2020 and falsely accused him of voluntarily leaving Harsco's facility without authorization and informed Plaintiff that he was terminated effective immediately.

**FOR A FIRST CAUSE OF ACTION**
**(FRSA Whistleblower Retaliation)**

32. Plaintiff repeats the preceding facts and allegations of this Amended Complaint as if fully set forth verbatim and incorporates the same by reference.

33. Harsco has several business lines; in 2020, Harsco's rail operations, referred to by Harsco as "Harsco Rail," represented approximately 18% of its revenues in 2020.

34. Harsco Rail engages in the research, development, sale, and aftermarket service and maintenance of a number of railroad items, including surfacing equipment, utility track vehicles,

production grinders, tie equipment, and new track construction equipment, and its customers include "railroad carriers" as defined by 49 U.S.C. § 20102(3).

35. Harsco provides its customers both on-site technical assistance and training programs for the equipment it sells.

36. Moreover, Harsco offers "contracting services" to its customers. Harsco provides work crews that operate its customers' equipment, determine its customers maintenance need, and meets those needs. In its Form 10-K Annual Report for the fiscal year ending in December 31, 2020 filed with the United States Securities and Exchange Commission, which is incorporated herein by reference, Harsco touts that "Harsco Rail's contract service teams have covered more than 397 thousand miles of track, helping customers achieve desired productivity goals."

37. While providing the foregoing services and products, Harsco provided railroad transportation to its own employees and equipment and for its customers. As such and at all times relevant to this Amended Complaint, Harsco was both a "railroad carrier" as defined in 49 U.S.C. § 20102(3) and a "contractor or subcontractor of a railroad carrier" within the meaning of 49 U.S.C. § 20109(a), and it was an employer subject to the anti-retaliation provisions of 49 U.S.C. § 20109 of the FRSA.

38. Plaintiff, at all relevant times, was a railroad employee of the Defendant for purposes of the FRSA.

39. While employed, Plaintiff engaged in protected activity by reporting hazardous safety concerns to his superiors.

40. As a result of his reports, Plaintiff was disciplined, demoted, and ultimately terminated for engaging in the protected activity.

41. Plaintiff reported to his supervisor an unsafe and dangerous condition relating to

working on a railway car that had yet to have the windows installed. Such work, if it had proceeded, would have directly endangered the lives of Defendant's employees working on the railway car.

42. Despite Plaintiff's reporting the unsafe condition in accordance with South Carolina law, his supervisor attempted to proceed with the work until a safety officer prevented the work from going forward.

43. As a result of Plaintiff reporting the unsafe condition, Plaintiff's supervisor began a constant pattern of harassing and intimidating Plaintiff while he was attempting to perform his job.

44. Defendant, through Plaintiff's supervisor, ultimately suspended Plaintiff under false claims that Plaintiff left his position early. Defendant, again through Plaintiff's supervisor, later terminated Plaintiff for no legitimate reason and any such reason was a mere pretext and the actual cause was to retaliate against Plaintiff for his reporting the unsafe working conditions.

45. At all times alleged herein, Defendant approved or implicitly approved the retaliatory misconduct of Plaintiff's supervisor and the hostile work environment created for Plaintiff at Harsco's facility.

46. Harsco's wrongful and retaliatory termination of Plaintiff has directly and proximately caused him to suffer actual damages in the form of lost earnings, lost future earnings capacity, damage to professional reputation, lost job opportunities, job search expenses, professional stigma, lost employment benefits, and emotional distress. Accordingly, Plaintiff is entitled to recover actual damages from Defendant sufficient to compensate him for his economic and non-economic damages caused by Defendant's wrongful termination.

47. Upon further information and belief, Harsco's wrongful termination of Plaintiff was intentional and in reckless disregard of his rights to be free from such termination.

48. Therefore, Plaintiff is entitled to recover punitive damages against Harsco, in an amount to be determined by the jury, sufficient to deter Harsco and others from engaging in such unlawful actions in the future.

49. On or about November 13, 2020, Plaintiff filed the administrative complaint with the U.S. Department of Labor against Harsco as required by 49 U.S.C. § 20109(d), and the Department acknowledged receipt of his administrative complaint on November 16, 2020. Harsco provided its position statement to the Department on December 17, 2020, and Plaintiff provided his rebuttal to the Department on February 12, 2021. More than 210 days has passed, and the Department has failed to issue any determination; therefore, this action was timely filed on March 23, 2022 pursuant to 49 U.S.C § 20109(d)(3). Therefore, Plaintiff has properly exhausted administrative remedies prior to bringing this action.

## FOR A SECOND CAUSE OF ACTION
**(Defamation)**

50. Plaintiff repeats the preceding facts and allegations of this Amended Complaint as if fully set forth verbatim and incorporates the same by reference.

51. Harsco, by making Tobin Plaintiff's supervisor, granted him the authority to make reports against Plaintiff to Harsco's human resource personnel. Making reports on Plaintiff and his team of employees was within the scope of employment and authority granted to Tobin by Harsco.

52. Tobin, as an authorized servant of the Defendant, knowingly made false accusations about Plaintiff and communicated these false statements to Plaintiff and human resources. Specifically, Tobin falsely communicated to third parties that Plaintiff left the facility unauthorized while on shift.

53. Tobin knew this statement was false because he was the reason Plaintiff was not at

work and unable to enter the facility.

54. Tobin made these communications knowing that it would cause Plaintiff harm and could result in Plaintiff's termination.

55. Despite his knowledge, Tobin still made the false report with the intent to harm Plaintiff and while acting within the course and scope of his employment for Harsco.

56. Tobin's knowledge that the report would cause harm along with his knowledge of the falsity of his communications amounts to malice on the part of the Defendant.

57. Defendant's false accusations were material as Defendant used Tobin's false accusations as the basis to terminate Plaintiff's employment.

58. Harsco subsequently ratified Tobin's defamatory publication on or after June 22, 2020, by terminating Plaintiff.

59. Defendant's wrongful termination of Plaintiff has directly and proximately caused him to suffer actual damages in the form of lost earnings, lost future earnings capacity, damage to professional reputation, lost job opportunities, job search expenses, professional stigma, lost employment benefits, and emotional distress.  Accordingly, Plaintiff is entitled to recover in this action actual damages from Defendant sufficient to compensate him for his economic and non-economic damages caused by Plaintiff's wrongful termination.

60. Therefore, Plaintiff is entitled to recover punitive damages against Defendant, in an amount to be determined by the jury, sufficient to deter Defendant and others from engaging in such unlawful actions in the future.

**FOR A THIRD CAUSE OF ACTION**
**(Race Discrimination in Violation of Section 1981 as to Defendant)**

61. Plaintiff repeats the preceding facts and allegations of this Amended Complaint as if fully set forth verbatim and incorporates the same by reference.

62. Plaintiff was terminated June 22, 2020 as a result of the early morning incident. Specifically, Plaintiff was terminated for voluntarily leaving Harsco's facility without authorization.

63. Other similarly situated white employees of the Defendant have not been terminated or reprimanded under the same, similar or worse circumstances.

64. Plaintiff has knowledge of at least one white male employee, who was involved in a similar incident, but was not terminated; whereas Plaintiff was terminated.

65. Such treatment, described herein, constitutes unlawful discrimination in violation Plaintiff's rights and privileges as guaranteed by the Thirteenth Amendment to the United States Constitution and as protected by 42 U.S.C. § 1981.

66. As a direct and proximate result of the racial discrimination alleged herein, Plaintiff was terminated and otherwise suffered disparate treatment. Plaintiff is entitled to all damages caused thereby including back pay, front pay, loss of earning capacity, lost benefits; as well as, emotional distress, loss of reputation, humiliation, embarrassment, mental anguish, and the loss of his employment and future potential earnings. Plaintiff is entitled to punitive damages for the same; as well as, the attorneys' fees and costs of this action.

67. Defendant's actions as alleged herein were willful and intentional acts and were committed with malice and/or a reckless indifference to Plaintiff's federally-protected rights. Accordingly, Plaintiff is entitled to have and recover of the Defendant punitive damages under 42 USC § 1981 in amounts to be proven at trial.

68. Plaintiff repeats the preceding facts and allegations of his Complaint as if fully set forth verbatim and incorporates the same by reference.

69. Defendant, by and through its agents and employees, engaged in an intentional, and systematic policy, pattern, and/or practice of discrimination against Plaintiff.

70. As a result, Plaintiff was subject to disparate treatment based on his race. Defendant intentionally discriminated against Plaintiff in violation of Title VII by, among other things:

   a. Applying different disciplinary measures;

   b. Not adequately investigating the circumstances surrounding Plaintiff's June 22, 2020 termination;

   c. Refusing to give Plaintiff a genuine appeal procedure for his termination;

   d. Wrongfully terminating Plaintiff; and

   e. Providing better treatment to Plaintiff's similarly situated white male colleagues.

71. Defendant's actions, by and through their agents and employees, are intended to and do have the effect of:

   a. Denying Plaintiff business opportunities because his race;

   b. Evaluating Plaintiff's performance more negatively because of his race;

   c. Providing Plaintiff with inferior terms and conditions of employment because of his race.

72. The discriminatory acts that constitute Defendant's pattern and/or practice of discrimination have occurred both within and outside the liability period in this case.

73. Such treatment, described herein, constitutes unlawful discrimination in violation of Title VII for which Defendant is liable.

74. As a direct and proximate result of Defendant's discriminatory actions described herein, Plaintiff has suffered damages including, but not limited to, lost past and future income, compensation, and benefits.

## FOR A FOURTH CAUSE OF ACTION
**(Retaliation in Violation of Section 1981)**

75. Plaintiff repeats the preceding facts and allegations of this Amended Complaint as if fully set forth verbatim and incorporates the same by reference.

76. Plaintiff engaged in protected activities, including but not limited to making complaints of racial discrimination and a racially hostile work environment.

77. Defendant Harsco took adverse actions against Plaintiff with the purpose of retaliating against him because of his participation in the protected activities.

78. The adverse actions taken by Harsco include, but are not limited to:
    a. Ignoring Plaintiff's complaints and reports of discrimination and harassment;
    b. Excluding Plaintiff from his work team;
    c. Not communicating directly with plaintiff about work related tasks;
    d. Not providing Plaintiff with information he was lawfully entitled;
    e. Failing to investigate any of the complaints of discrimination made by Plaintiff; and
    f. Failing to provide Plaintiff equal terms of employment as similarly situated white employees;

79. The actions taken against Plaintiff and the actions which have resulted in his disparate treatment and damages all are the result of the planned and concerted effort to retaliate against Plaintiff for reporting discrimination.

80. Defendant Harsco is liable to the Plaintiff for the willful, wrongful and bad faith retaliation against Plaintiff. Plaintiff is entitled to an award of actual damages as well as punitive

damages for the willful and intentional acts of Harsco, by and through its agents and employees, for reasonable attorneys' fees and costs of this action

## FOR A FIFTH AND *ALTERNATIVE* CAUSE OF ACTION
### (Wrongful Discharge, Breach of Employee Handbook)

81. Plaintiff repeats the preceding facts and allegations of this Amended Complaint as if fully set forth verbatim and incorporates the same by reference.

82. Defendant Harsco issues an employee handbook to its employees, including Plaintiff.

83. Upon information and belief, Harsco employee handbooks and guidelines contain all Defendant's policies and procedures related to an individual's employment with the company, including disciplinary and termination procedures.

84. Defendant Harsco's handbook is not on the first page nor has the language as proscribed by South Carolina law. [ECF No.: 4-2, pp. 2 – 4 and 58].

85. With respect to certain policies and procedures, Harsco's employee handbook uses mandatory language in many sections including but not limited to Harsco's retaliation policy.

86. Specifically, Harsco's retaliation policy uses the following mandatory language:

   a. "The Company **will neither engage in nor tolerate** unlawful retaliation of any kind against any person. . ." [ECF No.4-2, p. 12].

   b. "Harsco **will not permit** any retaliation against an employee who has made a complaint or report of discriminatory harassment." [ECF No.: 4-2, p. 9].

87. Other non-compliant, binding, and mandatory language is used in the following non-exhaustive locations within the Defendant's handbook:

   a. "Any officer, manager, supervisor, other employee, agent or non-employee who, after appropriate investigation, has been found to have engaged in unlawful discrimination, harassment or retaliation and/or inappropriate behavior inconsistent

13

with this policy (even if not unlawful) **will** be subject to appropriate corrective action, up to and including termination of his or her employment or other relationship with our Company." [ECF No. 4-2, p.13].

b. "Employees **must** call the main number at 803-822-9160, choose option 8 and leave a message as to their status as well as their request to use Emergency Vacation or Personal Time Off (PTO)." [ECF No. 4-2, p. 55].

88. Such language creates a binding contract between Defendant's employees and the Defendant.

89. In terminating Plaintiff, Harsco, through its agents and employees, failed to adhere to the progressive discipline plan or its whistleblower procedure outlined in its policies thereby breaching its employment contract with Plaintiff.

90. Harsco's wrongful termination of Plaintiff has directly and proximately caused him to suffer actual damages in the form of lost earnings, lost future earnings capacity, damage to professional reputation, lost job opportunities, job search expenses, professional stigma, lost employment benefits, and emotional distress. Accordingly, Plaintiff is entitled to recover actual damages from Defendant Harsco sufficient to compensate Plaintiff for his economic and non-economic damages caused by Defendant's wrongful termination.

91. Upon further information and belief, Defendant's wrongful termination of Plaintiff was intentional and in reckless disregard of his rights.

83. Therefore, Plaintiff is entitled to recover punitive damages against Defendant, in an amount to be determined by the jury, sufficient to deter Defendant and others from engaging in such unlawful actions in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, having fully set forth his allegations against Defendant, Plaintiff respectfully prays that this Court enter judgment against Defendant by:

a. Awarding Plaintiff actual and compensatory damages for economic and non-economic injuries;

b. Awarding Plaintiff his costs and disbursements in this action, including reasonable attorneys' fees and costs, and expert fees and costs;

c. Awarding Plaintiff punitive damages, as permitted by law;

d. Awarding Plaintiff prejudgment and other interest on all monetary damages, as permitted by law; and

e. Granting Plaintiff such other and further relief as this Court may deem just and proper.

**DICKEY LAW GROUP, LLC**

By: *s/Joseph D. Dickey, Jr.*
Joseph D. Dickey, Jr. (SC Bar No. 100064)
440 Center Street
West Columbia, SC 29169
(803) 380-5575 (telephone)
(803) 380-5576 (facsimile)
joseph@dickeylawsc.com

*Attorney for Plaintiff*

September 9, 2022
West Columbia, South Carolina